Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY T. TANG, an individual,

                          Plaintiff,

              v.

CITY OF SEATTLE, a Washington
municipality,

                          Defendant.

No.   C19-2055-RSL

**CITY OF SEATTLE'S MOTION TO
ALLOW FRCP35 PSYCHIATRIC
EXAMINATION OF PLAINTIFF**

**NOTE ON MOTION CALENDAR FOR:
NOVEMBER 20, 2020**

## I.     INTRODUCTION AND RELIEF REQUESTED

Defendant City of Seattle moves this Court for an order compelling plaintiff Henry T. Tang to attend an FRCP 35 independent psychological examination with psychiatrist Dr. Jean Dalpé in December 2020.

## II.     FRCP 26(i) CERTIFICATION

Counsel for the parties met and conferred telephonically on October 28, 2020, regarding defendant's request for an independent medical examination of plaintiff based on his claims of disability discrimination and retaliation wherein he has asserted he is entitled to damages for alleged

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC
EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 1

1   sustained pain and suffering.  Plaintiff's counsel did not agree to such an examination and the parties

2   remain at odds with respect to the FRCP examination, necessitating this motion. Lee Decl., Ex. 1.

3                          III.    FACTUAL BACKGROUND

4          This case involves disability discrimination, retaliation, due process, and wrongful

5   termination claims brought by plaintiff Henry Tang against defendant City of Seattle. *Dkt. 1-2.*

6   Plaintiff claims defendant discriminated against him for taking medical leave for a temporary

7   disability due to a serious (mental health) medical condition, failed to provide him with reasonable

8   accommodations for his (mental health) disability, and denied him due process in his termination

9   proceedings. According to plaintiff's tort claim, plaintiff is claiming damages in the amount of

10  $5,000,000.00. Lee Decl., Ex. 2.

11  **A.      Plaintiff's Employment History with the City from 1994-2014**

12         Plaintiff joined Seattle Public Utilities ("SPU") as an Assistant Civil Engineer in 1994, fresh

13  from the University of Washington. He became a licensed professional engineer ("P.E.") in 2000,

14  which requires an engineer to have four years of experience and pass a test. His next role at SPU

15  was in construction management, and then he went into the design division, where he did drainage

16  and wastewater engineering design work. Lee Decl.  After that, Tang joined the dam safety group.

17  In 2008, Tang applied to have his position reclassified to a Senior Civil Engineer, which involved

18  higher pay and responsibility. Tang struggled with performing his duties as a Senior Civil Engineer

19  in the areas of attendance, technical skills, quality assurance, client service and meeting deadlines.

20  Tang received his 2011 Performance Review on March 26, 2012, in which he had "below standard"

21  rankings for all categories except Safety.  In early February 2013, SPU management recommended

22  that Tang be demoted to Associate Civil Engineer based on his "continued failure to perform the

23  responsibilities required of a Senior Civil Engineer. The City had multiple, non-retaliatory reasons

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC
EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 2

for demoting Tang.  Tang's attendance and work performance was poor; he failed to follow clear instructions about email protocols. Tang resisted repeated efforts at coaching and attempts to support him.  Tang was transferred to a new group with a new supervisor in October 2013.  He requested, and the City approved, a one-year, unpaid sabbatical that began in June 2014.

### B.    Plaintiff's Employment History from 2015 to April 2018

Tang returned from sabbatical in June 2015 to his full-time position and within that same month requested family medical leave for mental health conditions. Tang's treating psychiatrist faxed the City a signed medical certification for those conditions and specified the nature and amount of medical leave needed. The City approved the intermittent family medical leave certified by the psychiatrist and provided a medical accommodation for Tang's leave. In providing that accommodation, the City instructed Tang to notify his supervisors when he was taking leave for his condition, and adjust his calendar so that he could be present for meetings.  However, Tang tried to re-adjust his leave requests that conflicted with his psychiatrist's certification. Additionally, Tang did not comply with notification, participation, and reporting requirements set by the City, despite numerous reminders and coaching.

Tang's treating psychiatrists and healthcare providers continued to certify his psychiatric conditions and specify the amount of leave needed for him.  Tang did not abide by the leave specified by his healthcare providers and took more leave than authorized by them.  Tang also continued to ignore the notice, participation, and reporting obligations he had to the City when he exercised his medical leave, which led to disciplinary action.  Tang also took additional family medical leave for caring for his mother who was injured in a car accident. Tang received a verbal warning in February 2017.  Tang received a written reprimand in April 2017, then a second written reprimand in July 2017. In August 2017, Tang received a 7-day suspension without pay.  By mid-October 2017, Tang

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC
EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 3

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

had exhausted all of his unpaid family medical leave.

In November 2017, Tang was informed that management recommended suspension of 15 days because of continued, unapproved absences.  Tang requested an accommodation to continue taking unpaid leave as needed due to his mental health conditions.  To address Tang's long term needs, the City offered to facilitate a job search to look for alternative positions in the City for which he was qualified and which could meet his medical leave needs as certified by his healthcare providers. The City informed Tang that during the job search process, he would be provided with full-time unpaid leave.  Also the City informed Tang that if it identified a vacant position, and the top salary matched that of his current position, the City would make steps to laterally transfer him into the position.  If a position with a lower salary was identified, Tang would be given the opportunity to voluntarily reduce into the position provided he had the minimum qualifications required and the essential job duties were consistent with his accommodation needs. Finally, the City informed Tang that if he declined any position offered to him through the job search process, the City's efforts to facilitate his job search would end.

Tang attempted to make a counter-offer to the job search accommodation by stating that if he declined a "vacant, equivalent" position offered by the City, then the job search accommodation would end.  Tang used this verbiage based on an excerpt of a disability resource guide.  The City rejected the counterproposal and notified him that by choosing to enter into a job search process, he was acknowledging that he could no longer perform the essential functions of the Associate Civil Engineer position.  Tang signed the City's job accommodation offer on December 14, 2017, and unilaterally added language that "ADA and City policies with respect to leave and job reassignment as reasonable accommodation shall be observed."

In January 2018, the City located a position for which Tang had the minimum qualifications

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 4

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and could meet his medical leave accommodations certified by his healthcare providers. Tang declined the offer and the City notified him that he would be medically discharged if he did not accept the offered position.  In March 2018, Tang met with the City's appointing authority regarding the City's recommendation to medically discharge plaintiff. The City offered Tang one final opportunity to accept the offered position, which plaintiff declined.   In April 2018, the City medically discharged Tang from his employment.

### C.    Plaintiff's Disability Discrimination and Retaliation Claims against City of Seattle

On September 20, 2019, the City received Tang's tort Claim for Damages.  Tang stated he "was subjected to harassment, discipline and retaliation for exercising my right to take family leave. I was also wrongfully terminated from employment due to my race and/or disability and the employer's failure to reasonably accommodate my disability.  There was also no due process."  Tang described his injuries as "emotional distress, pain and suffering" and named psychiatrist Belinda Gustafson as a doctor who would provide information regarding his injuries. Lee Decl., Ex. 2.

In November 2019 Tang filed his Complaint against the City in King County Superior Court. He asserted in his Complaint that the position offered by the City was not an equivalent position, because it was not full-time and its compensation was substantially lower than his previous work position. *Dkt. 1-2, ¶¶ 3.8, 3.9.*  Tang claimed that the City violated its disability policy because it was not equivalent. *Id. ¶ 3.10.*  Tang asserted that as a result of the City's violations of the law, he suffered significant economic and non-economic damages. *Id. ¶ 3.18.*  In December 2019, the Complaint was removed from King County Superior Court to this Court. *Dkt. 1.*

In Tang's Initial Disclosures, dated January 14, 2020, he identified five healthcare providers, including two psychiatrists who had knowledge of his physical and mental conditions related to his disability and need for leave and/or accommodation. Lee Decl. Also included as a part of his

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 5

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

disclosures were FML medical certification forms signed by his psychiatrist and medical doctors.

In Tang's responses to the City's first interrogatories and requests for production, he stated that he has suffered severe physical, mental, and emotional injuries as a result of the wrongful acts of the City.  Tang also identified suffering from conditions that are diagnosable under the criteria set out in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V).

## IV.   LEGAL AUTHORITY

### A.   Rule 35 Examinations and Showing Matter in Controversy

Rule 35 provides that "[t]he court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed.R.Civ.P. 34(a)(1). Before the Court may order a Rule 35 exam, it must determine whether the moving party has established the existence of the Rule's requirements of "in controversy" and "good cause." *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

Courts interpreting Rule 35(a) for mental related evaluations have considered whether: (1) the plaintiff pled a cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff alleged a specific mental or psychiatric injury; (3) the plaintiff pled a claim for unusually severe emotional distress; (4) the plaintiff plans to offer expert testimony to support a claim of emotional distress; and/or (5) the plaintiff conceded that his or her mental condition is "in controversy" for purposes of Rule 35(a). *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal.1995). Courts in the 9th Circuit have consistently found a Rule 35 examination is not warranted where none of the *Turner* factors exist and the case does not surpass a generic claim for emotional distress. *See, e.g., Montez v. Stericycle, Inc.*, 2013 U.S. Dist. LEXIS 69984, *11, 2013 WL 2150025 (E.D.Cal.); *Ford v. Contra Costa County*, 179 F.R.D. 579, 580 (N.D.Cal.1998).

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

However other courts have held a plaintiff puts her mental health in controversy when it appears "inextricably intertwined" with the full story of her claim and the emotional distress alleged is severe and beyond a "garden variety" claim. *See Thiessen v. Gen. Elec. Capital Corp.*, 178 F.R.D. 568, 571–2 (D.Kan.1998).

In some situations the pleadings alone are sufficient to meet these requirements. *Schlagenhauf v. Holder*, 379 U.S. at 119.  For example, a "plaintiff in a negligence action who asserts mental or physical injury...places that mental or physical injury clearly in controversy and provides defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* (internal quotation marks and citation omitted).

Here, more than one *Turner* factor is applicable that meets the controversy requirement for aa Rule 35 psychiatric exam.  Tang plans to offer testimony from his psychiatric and medical doctors to support his claim of emotional distress resulting from the City's alleged violations and "wrongful termination," which the City fervently denies.[1] Plaintiff also has claimed that very specific DSM-V diagnosable mental conditions resulted from the City's violations and wrongful termination, again which the City denies.  In plaintiff's Complaint under Request for Relief, number 5, he has pled for "An order granting Plaintiff an award of damages for all other forms of economic losses, including, without limitation specific damages resulting from his medical costs as a result of the **stress** and **panic attacks** he suffered, and general damages for mental anguish, **emotional distress**, and pain and suffering in an amount to be proven at trial."  *Dkt. 1-2, pp. 6-7* (emphasis added).

Plaintiff's psychiatric condition is in controversy in this case, because it is why the City made the employment decisions it did, which Tang contends violated policies and laws causing him injury. Tang claims he should have been offered a full-time, equivalent position instead of a part-time, "lower

---

[1] Quote from Plaintiff's Initial Disclosures, page 4.

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 7

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

pay" position despite the evidence that he could not perform the essential duties of a vacant, full-time equivalent position based on his mental conditions and medical leaves necessitated by the conditions.

### B.    Good Cause Exists for Compelling a Rule 35 Examination

"Good cause exists to order an examination where a movant makes an affirmative showing that the [medical examination] could adduce certain facts relevant to the action, and that the [medical examination] is necessary to the parties' case." *Breed v. Vons Co., Inc.,* 2012 WL 2860688, at *3 (D.Nev. July 11, 2012).  Courts have evaluated good cause by examining several factors, including: (1) the possibility of obtaining the desired information by other means, (2) whether plaintiff plans to prove her claim through the testimony of expert witnesses, (3) whether the desired information is relevant, and (4) whether plaintiff is claiming an ongoing injury. *Lopez v. City of Imperial*, No. CIV. 13-0597-BEN WVG, 2014 WL 232271, at *3-4 (S.D. Cal. Jan. 21, 2014).

Here, good cause exists for allowing a Rule 35 psychiatric examination of Tang.  First, he is claiming ongoing injury because of the City's alleged violations of law and wrongful termination, such as stress, panic attacks, and anxiety, as well as other DSM-V diagnosable conditions.  Second, Tang will be having his psychiatric and other medical doctors testify that his conditions were proximately caused by the City's acts and/or omissions and the City needs to be able to evaluate and/or rebut proximate cause.  Third, the City denies that its acts and/or omissions proximately caused Tang's conditions.  Fourth, a Rule 35 psychiatric examination will provide much needed information on the issue of Tang's ongoing injuries he claims were caused by the City and whether he would have been able and is still able to work a full-time, "equivalent" position he had before his conditions manifested to an extent that necessitated doctor certification and medical leave, and which ultimately led to the City medically discharging his employment after he declined a position that accommodated his medical conditions.

CITY OF SEATTLE'S MOTION TO ALLOW FRCP 35 PSYCHIATRIC EXAMINATION OF PLAINTIFF (C19-2055-RSL) - 8

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**C.      Proposed Conditions of Rule 35 Psychiatric Exam Under FRCP 35(2)(B).**

*1.      Dates, Times and Location of Exam*

Psychiatrist Dr. Jean Dalpé has availability to examine Tang on the following dates, times, and locations: (1) December 28, 2020 at 8am, 9:15am, or 2:15pm at Everett MES which is located at 8625 Evergreen Way, Suite 215, Everett, WA 98208; (2) December 29, 2020 at 9:15am or 2:15pm at the Seattle MES location, which is 4636 E Marginal Way S., Suite 210, Seattle, WA 98134; and (3) December 30, 2020 at 8am, 9:15am, 10:30am or 11:45am at the Federal Way MES location, which is 505 S. 336th St., Suite 150, Federal Way, WA 98003.  <u>Lee Decl., Ex. 3 (Dr. Dalpé CV)</u>. The City would propose the earliest of the three dates to allow sufficient time for a report and deposition to occur before the January 15, 2021 discovery cutoff. The City will also agree to making Dr. Dalpé available for deposition after the discovery cutoff.

*2.      Conditions of the Exam*

The length of the examination will not exceed 90 minutes and there will not be any psychological testing performed.  No video and/or audio recording of the examination and no third parties, including plaintiff's attorney, will be permitted to attend the examination ordered by district court. *See Tomlin v. Holecek*, D.Minn., 150 F.R.D. 628, 1993.  Pursuant to Rule 35(b), the City will provide Tang with a copy of Dr. Dalpé's examination report, which will be in writing and will set out in detail/ Dr. Dalpé's findings, including diagnoses, and conclusions.

# V.      <u>CONCLUSION</u>

Defendant City of Seattle for the aforementioned reasons respectfully requests the Court for an Order compelling plaintiff Tang to submit to a Rule 35 psychiatric examination.

//

//

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

DATED this 5th day of November, 2020.

PETER S. HOLMES
Seattle City Attorney

By:     s/ Sarah L. Lee
        SARAH . LEE, WSBA #27364
        KATRINA R. KELLY, WSBA #28435
        Assistant City Attorneys
        Seattle City Attorney's Office
        701 Fifth Ave., Suite 2050
        Seattle, WA  98104-7095
        Ph: (253) 224-4450 CELL
        Fax: (206) 684-8284
        sarah.lee@seattle.gov
        katrina.kelly@seattle.gov

        Attorneys for Defendant City of Seattle

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200